UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NANCY ZENZEL,

                Plaintiff,

    V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

**REPORT AND RECOMMENDATION**

11-CV-259
(TJM/VEB)

## I. INTRODUCTION

In January of 2007, Plaintiff Nancy Zenzel applied for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since October of 2006, due to physical impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Lachman & Gorton, Peter A. Gorton, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB in January of 2007, alleging disability beginning on October 25, 2006. (T at 87-97).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Marie Greener on March 17, 2009. (T at 22). Plaintiff appeared in Binghamton, New York with her attorney and testified. The ALJ presided via videoconference. (T at 25-47).

On May 5, 2009, ALJ Greener issued a written decision finding that Plaintiff was not disabled and therefore not entitled to benefits. (T at 11-19). The ALJ's decision became the Commissioner's final decision on February 15, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

Plaintiff, through counsel, timely commenced this action on March 9, 2011.(Docket No. 1). The Commissioner interposed an Answer on July 5, 2011. (Docket No. 8). Plaintiff filed a supporting Brief on November 28, 2011 (Docket No. 13) and then filed an Amended Brief on November 29, 2011 (Docket No. 14). The Commissioner filed a Brief in opposition on February 9, 2012. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 9).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons that follow, it is recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for further administrative proceedings.

## III. DISCUSSION

### A. Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

**1.   Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 25, 2006, the alleged onset date.  She also concluded that Plaintiff had the following severe impairments: asthma, right knee, and hip dysfunction. (T at 13).

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 14). The ALJ concluded that Plaintiff retained the residual functional capacity to lift no more than 10 pounds at a time; sit for 6

---

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

hours in an 8-hour workday; stand for 2 hours in an 8-hour workday; and walk for 2 hours in an 8-hour workday. The ALJ found that Plaintiff should avoid concentrated exposure to respiratory irritants. (T at 14-17).

The ALJ found that Plaintiff could not perform her past relevant work as a cashier or monitoring aide. (T at 16). However, considering Plaintiff's age (46 years old on the alleged disability date), education (high school), and residual functional capacity, the ALJ determined that there were jobs that exist in the national economy that Plaintiff can perform. (T at 18-19).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined under the Social Security Act, from the alleged onset date (October 25, 2006) through the date of the ALJ's decision (May 5, 2009) and was therefore not entitled to benefits. (T at 19). As noted above, the ALJ's decision became the Commissioner's final decision on February 15, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers two (2) principal arguments in support of this position. First, Plaintiff challenges the ALJ's conclusion that her headaches were not a severe impairment. Second, Plaintiff contends that the ALJ erred by finding that her carpal tunnel syndrome was non-severe. After setting forth the applicable legal standard, this Court will address both arguments in turn.

### a. Legal Standard - Severity

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of basic work activities: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a).

The Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), but the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). A "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

    **b.**    **Evaluation of Plaintiff's Headaches**

Plaintiff's medical records contain numerous complaints of headaches (generally

characterized as migraine or vascular in nature), including complaints of missed work due to the condition. (T at 228-29, 272). In particular, Plaintiff indicated that she experienced eye drooping and a "very severe aching sensation," with headaches lasting for days. (T at 272, 295, 303). Prescription medication was unsuccessfully tried by Plaintiff's treating providers. (T at 30, 272, 296, 304).

An MRI in April of 2007 reviewed by Plaintiff's treating neurologist (Dr. Kruthiventi) yielded the following findings: "non-specific white matter disease, frontoparietal occipital lobe correlate[d] clinically for small vessel disease, demyelinating disorder, or less likely . . . Lyme disease." (T at 296, 329). An April 2009 MRI produced similar results. (T at 276). Mr. Burket, a treating physician's assistant, noted Plaintiff's headaches and opined that Plaintiff would be "very limited" with regard to functioning in a work setting at a consistent pace. (T at 226).

Plaintiff testified that she lost her most recent job because of missed work time related to constant, severe headaches. (T at 26). She indicated that she experiences severe headaches several times a week. (T at 29). At the time of the hearing, her medication (Maxalt-MLT) was essentially ineffective and causing nausea and dizziness. (T at 30).

The ALJ concluded that Plaintiff's headaches had not been shown to "significantly limit her ability to perform basic work activities . . . ." (T at 14). This Court finds that the ALJ's decision was not supported by substantial evidence. As outlined above, Plaintiff's testimony regarding disabling headaches was supported by treatment notes, MRI scans documenting brain abnormalities, and a treating provider's opinion regarding her ability to

function in a work setting at a consistent pace.[4] The ALJ did not adequately consider this supporting evidence, instead focusing on Plaintiff's activities of daily living and the ALJ's observations of Plaintiff at the hearing.

Plaintiff told Dr. Naughten, a consultative examiner, that she cooks every day and does laundry, but no cleaning. (T at 204). She does no child care, and generally watches television and reads. (T at 204). The ALJ cited these activities in support of her decision (T at 16), but did not explain how the performance of these rather limited activities was inconsistent with episodic, disabling headaches. Indeed, it is well-settled that "[s]uch activities do not by themselves contradict allegations of disability," as "people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.").

Likewise, the ALJ referenced the fact that she "observed that [Plaintiff] was able to attend the hearing process closely and fully without any noted distractions or overt pain behavior." (T at 17). The ALJ's assessment of a claimant's demeanor during an administrative hearing is entitled to "limited weight," particularly where (as here) the assessment was made via videoconference and where the claimant's condition (i.e. headaches) is episodic in nature. See Snyder v. Barnhart, 212 F. Supp. 2d 172, 179-80 (W.D.N.Y. 2002); see also Jopson v. Astrue, 517 F. Supp. 2d 689, 707 (D. Del.

---

[4]As discussed below, this Court recognizes that a physician's assistant is not a "treating source" under the Social Security Regulations and, as such, Mr. Burket's opinion is not entitled to any special weight. However, his opinion (which is supported by the medical record) is some evidence of the severity of Plaintiff's headaches and the impact of that condition on her ability to perform basic work activities.

2007)(holding that "the ALJ's own impression of plaintiff, acquired from miles away during a short video teleconference, should get merely a scintilla of weight").

The ALJ also did not adequately consider the fact that Plaintiff's testimony regarding the severity of her headaches was supported by the medical record documenting consistent complaints along with the MRI results and a series of (unsuccessful) attempts to treat the condition with prescription medication.

The Commissioner suggests that any error by the ALJ with regard to the assessment of the severity of Plaintiff's headaches was harmless because the ALJ continued with the sequential evaluation. There is general support in the case law for such a holding. See, e.g., McCartney v. Commissioner of Social Sec., No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments.").

However, this type of "harmless error" finding is appropriate only when it is clear that the ALJ considered the claimant's headaches and their effect on his or her ability to work during the balance of the sequential evaluation process. See id. at *15 ("In the instant appeal, the record shows that the ALJ considered Plaintiff's complaints of headaches and their effect on his ability to work . . . .").

In the present case, it is not clear that the ALJ considered the limiting effects of Plaintiff's headaches once she found them to be a non-severe impairment. In particular, the ALJ appears not to have considered that Plaintiff might have difficulty maintaining a regular work schedule due to periodic, debilitating headaches. The ability to perform work

on a regular and continuing basis is a necessary component of a residual functional capacity assessment. See Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999)(noting that an RFC determination requires an assessment as to the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the . . . assessment must include a discussion of the individual's abilities on that basis." . . . "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Given the medical evidence outlined above, the ALJ's error in finding Plaintiff's headaches to be non-severe cannot be considered harmless.  As such, a remand is recommended for reconsideration of this issue.  On remand, the ALJ should further develop the record concerning the effect of Plaintiff's headaches on her ability to perform basic work activities by, for example, re-contacting the treating neurologists for an opinion in this regard.

### c. Evaluation of Carpal Tunnel Syndrome

Plaintiff underwent right open carpal tunnel release surgery on March 6, 2008. (T at 256-62).  Nerve conduction studies performed a year later yielded "essentially normal findings." (T at 279).  Dr. Sonthineni, who reviewed the nerve conduction study findings, found them "compatible with the diagnosis of mild bilateral distal median neuropathy as in carpal tunnel syndrome, with no evidence of axonal degeneration of either right of left median nerve." (T at 279).  Dr. Sonthineni also noted "handgrip weakness bilaterally worse on right." (T at 274).  Mr. Burkert, a treating physician's assistant, opined that Plaintiff was "very limited" with regard to the use of her hands. (T at 226).  The consultative examiner, Dr. Naughten, found full range of motion in Plaintiff's wrists bilaterally. (T at 206).  Plaintiff

testified that the release surgery brought temporary relief, but that her symptoms have returned, which she treats using special bandages when she sleeps. (T at 31-32).

The ALJ concluded that Plaintiff's carpal tunnel syndrome was a non-severe impairment. (T at 14). Primarily, the ALJ cited Plaintiff's activities of daily living and the fact that her carpal tunnel surgery yielded positive results "at least initially." (T at 16). The ALJ's conclusion as to this issue should also be revisited on remand. As noted above, the step two severity analysis is limited to "screen[ing] out de minimis claims." Dixon, 54 F.3d at 1030. Here, Dr. Sonthineni assessed "handgrip weakness" worse on the right side (following surgery) (T at 274) and Mr. Burkert found significant limitations with regard to Plaintiff's use of her hands. (T at 226).

This Court recognizes that the assessment of a physician's assistant is not entitled to any special weight under the applicable Social Security Regulations. Special weight is afforded only to the opinion of a "treating source," which is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502. Physician's assistants are not included in five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Rather, physician's assistants are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work, but their conclusions are not entitled to any special weight. 20 C.F.R. § 416.913 (d)(1).

While an "other source" opinion is not entitled to any special weight, the assessment should still be given some weight, especially when there is a treatment relationship with the

claimant. Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); see also Mejia v. Barnhart, 261 F. Supp.2d 142, 148 (E.D.N.Y.2003 (finding that the ALJ should have afforded a treating therapist's opinions at least a little weight where the therapist "saw plaintiff on a regular basis and [ ] offered a diagnosis consistent with that of the treating psychiatrist").

Here, as noted above, Mr. Burket's opinion is supported by Dr. Sonthineni's assessment of handgrip weakness and should not have been so quickly dismissed by the ALJ. At the very least, the ALJ should have given more consideration as to whether Plaintiff's diagnosed and documented carpal tunnel syndrome resulted in more than a *de minimus* limitation on her ability to manipulate objects and use her hands (and particularly her right hand) more generally in the performance of basic work activities. A follow-up request to Dr. Sonthineni for an assessment of the impact of the bilateral handgrip weakness on Plaintiff's ability to perform basic work-related activities would be helpful in this regard. A remand is therefore recommended for reconsideration of this issue.

**3.     Remand**

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8

(E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be DENIED, that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, and that this case be remanded for further administrative proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: July 6, 2012
Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS** to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 6, 2012

Victor E. Bianchini
United States Magistrate Judge